UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

FREDRICK WAYNE HARRIS               CIVIL ACTION NO. 13-cv-3208

VERSUS                              JUDGE STAGG

LONNIE NAIL                         MAGISTRATE JUDGE HORNSBY


**REPORT AND RECOMMENDATION**

**Introduction**

Frederick Wayne Harris ("Plaintiff") is a prisoner housed at the David Wade Correctional Center. He complains that Lonnie Nail, the South Compound Unit Manager, assigned him to a less desirable job in retaliation for a grievance that Plaintiff filed more than one year earlier. Nail has filed a Motion to Dismiss or Alternatively for Summary Judgment (Doc. 22) that attacks the merits of the claim. For the reasons that follow, it is recommended the motion be granted.

**Motion to Dismiss; Summary Judgment**

Nail challenges the adequacy of the allegations in the complaint pursuant to Fed. R. Civ. Pro. 12(b)(6), which requires that the court accept as true all well-pleaded facts in the complaint and view them in the light most favorable to Plaintiff. In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007). Nail also moves for summary judgment and submits his own affidavit and some other materials. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). A fact is

"material" if it might affect the outcome of the suit under governing law.  Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510 (1986).  A dispute is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. Anderson, supra; Hamilton v. Segue Software Inc., 232 F.3d 473, 477 (5th Cir. 2000).

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrate the absence of a genuine dispute of material fact.  Celotex Corp. v. Catrett, 106 S.Ct. 2548 (1986). If the moving party carries his initial burden, the burden then falls upon the nonmoving party to demonstrate the existence of a genuine dispute of a material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S.Ct. 1348, 1355-56 (1986).

**Relevant Facts**

Plaintiff was transferred from the Dixon Correctional Institute to David Wade in October 2011.  He arrived in possession of some Islamic DVDs that Colonel Nail considered to be contraband.  Plaintiff alleges that he should have been able to possess the DVDs, but they were taken from him on November 21, 2011 and later sent home with family members who came for a visit.  Plaintiff was also placed in administrative segregation for 10 days pending an investigation of the issue.

Plaintiff filed a grievance on November 30, 2011 and complained that he had been allowed to order and possess the DVDs at Dixon, but Colonel Nail had confiscated them because of a personal bias against the nation of Islam.  The warden's first-step response explained that all religious material must be provided through the religious library with

approval of the chaplain.  Prisoners are not permitted personal DVDs.  The DVDs were, accordingly, confiscated.  Plaintiff was placed in segregation briefly while the matter was investigated, but he was released without any disciplinary action.  The secretary's step-two response issued on February 3, 2012 and agreed with the warden's resolution.

This grievance provides background for the current claim, but no claim may be asserted based directly on the DVD confiscation because it would be untimely.  The applicable rule of limitations for a claim under 42 U.S.C. § 1983 brought by a Louisiana prisoner is the one-year prescriptive period established by La. Civ. Code art. 3492.  Hawkins v. McHugh, 46 F.3d 10, 12 (5th Cir.1995).  The limitations period is tolled during the time the prisoner pursues his administrative remedies.  Harris v. Hegmann, 198 F.3d 153, 157–59 (5th Cir.1999).  Far more than one year passed between the November 21, 2011 seizure of the DVDs and the filing of this complaint in December 2013, even when the time for exhausting administrative prerequisites (November 30, 2011 until  February 3, 2012) is excluded.

Plaintiff bases this complaint on events that occurred in January 2013.  Plaintiff had until then been housed in a protective custody unit based on his background as a Shreveport police officer.[1]  When Plaintiff arrived at David Wade in October 2011 the protective unit

---

[1] Plaintiff was sentenced to prison after he was convicted of forcible rape and public bribery. The evidence showed that he took money from and had sex with a young woman he stopped for a traffic offense.  Harris v. Warden, 2011 WL 5866222 (W.D. La. 2011).

was in the H5 dormitory on the south compound.  Plaintiff lived and worked there as a food server and was apparently happy with his job assignment.

Plaintiff represents that the prison administration later decided to relocate the protective unit to the north compound in unit N5.  Due to the accumulation of protective custody offenders, the administration interviewed several of them and asked if they wanted to transfer to the general population.  Plaintiff admits that he opted to be transferred to the general population, in which he had lived at Dixon without apparent incident.  Nail submits a waiver that Plaintiff signed in January 2013 in which he agreed to transfer to the general population.

Nail's memorandum states that Plaintiff was then transferred to the H2A dormitory on the north compound in general population.  Plaintiff's work assignment of south compound kitchen orderly was also changed at that time to Crew 30.  The heart of Plaintiff's complaint is his allegation that Nail decided to "take plaintiff's assigned job as a kitchen orderly and reassign him to crew-30 picking up cigarette butts" in retaliation for the DVD grievance that Plaintiff filed on November 30, 2011, more than a year earlier.  Plaintiff complains that the action was a retaliatory violation of his First Amendment right to file prison grievances.  He also complains that Nail did not put him on the list of offenders assigned to the honor dorm on the south compound.  Plaintiff states that honor dorm offenders are allowed greater privileges than offenders housed in his north compound area. He contends that he is more deserving than other prisoners who have been assigned to the honor dorm.

Defendants have submitted copies of the grievance proceedings, including Nail's response that he filed as part of that proceeding.  Such unsworn statements are not a substitute for an affidavit or other competent summary judgment evidence, but Nail also submits an affidavit.  He testifies in the affidavit that he did not retaliate against Plaintiff for any reason, particularly by changing his job assignment from kitchen orderly to Crew 30.  Nail does not explain the change other than to say that Plaintiff's allegation is "completely unfounded," that he has "never retaliated against offender Harris," and "I am not responsible for work details or assignments on the North Compound."

**Analysis**

To state a Section 1983 retaliation claim, an inmate must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation.  Jones v. Greninger, 188 F.3d 322, 324-25 (5th Cir. 1999).  Prisoners have a right to access the courts and pursue prison grievances, so officials may not retaliate against them for taking such actions.  Scott v. Nail, 589 Fed. Appx. 297 (5th Cir. 2015), citing Gibbs v. King, 779 F.2d 1040, 1046 (5th Cir. 1986).

The Fifth Circuit, fearful of conclusory and frivolous claims of retaliation, instructed in Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995) that "trial courts must carefully scrutinize these claims.  Conclusional assertions of retaliation are insufficient.  To establish a claim, a prisoner must produce either direct evidence of retaliation or at least "allege a

chronology of events from which retaliation may plausibly be inferred." <u>Woods</u>, 60 F.3d at 1166; <u>Scott</u>, 589 Fed. Appx. at 298.

Nail's affidavit, despite its lack of specificity, was sufficient to shift the summary judgment burden to Plaintiff and obligate him to come forward with evidence sufficient to create a genuine dispute of material fact.  Plaintiff responded with a memorandum in which he essentially repeated the allegations of his complaint and argued that there was no legitimate reason that he was not assigned to the honor dorm and allowed his more favorable job as a kitchen orderly. Unsworn memoranda, however, are not competent summary judgment evidence.  <u>Larry v. White</u>, 929 F.2d 206, 211 n. 12 (5th Cir. 1991).

Plaintiff has presented no direct evidence of retaliation, and the timeline does not present a chronology from which retaliation may plausibly be inferred.  The DVD seizure grievance was filed November 30, 2011, and the job reassignment did not take place until January 2013, more than a year later.  Plaintiff has not set forth any other facts that occurred in the relevant timeline that would suggest Nail made the job assignment because of the 2011 grievance.

Prison officials must routinely make decisions that affect the lives of inmates, sometimes negatively.  Those decisions include housing and work assignments, recreation and religious schedules, eligibility to participate in hobbycraft or other activities, and even the size of uniform issued a prisoner.  Prisoners often attempt to challenge such routine decisions by asserting a claim of retaliation,  but the Fifth Circuit standard makes clear that not every unfavorable decision gives rise to a viable claim merely because the inmate filed

a grievance or lawsuit in the past.  Plaintiff has not met his summary judgment burden or overcome the skepticism and careful scrutiny that such claims must face.

Accordingly,

**IT IS RECOMMENDED** that Lonnie Nail's **Motion to Dismiss or Alternatively for Summary Judgment (Doc. 22)** be **granted** and that all claims against Nail be **dismissed with prejudice**.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this the 7th day of April, 2015.

Mark L. Hornsby
U.S. Magistrate Judge